ANAPOL WEISS
BY: David S. Senoff, Esquire
BY: Sol H. Weiss, Esquire
BY: Melissa Fry Hague, Esquire
BY: Paola Pearson, Esquire
One Logan Square
130 N. 18th St.
Philadelphia, PA 19103
(215) 790-4550 phone/(215) 875-7733 fax
DSENOFF@ANAPOLWEISS.COM

*Attorneys for Plaintiff and the Putative Class*
Fred Blumberg

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Fred Blumberg, individually and on behalf of all others similarly situated, :<br><br>Plaintiff, :<br><br>v. :<br><br>WPP GROUP USA, INC., a Delaware Corporation; THE INTERPUBLIC GROUP : OF COMPANIES, INC., a Delaware Corporation; ALPHONSO, INC., a Delaware Corporation; TAPAD, INC., a Delaware Corporation; ISPOT.TV, INC., a Delaware Corporation; LOTAME SOLUTIONS, INC., a Delaware Corporation; XAXIS, INC., a Delaware Corporation; TUBEMOGUL, INC., a Delaware Corporation; AUDIENCE XPRESS LLC, a Delaware Limited Liability: Company; VIZIO HOLDINGS, INC, a Delaware Corporation; VIZIO, INC., a California Corporation; VIZIO INSCAPE SERVICES, LLC, a Delaware Limited Liability Company; VIZIO INSCAPE TECHNOLOGIES, LLC, a Delaware Limited Liability Company; COGNITIVE MEDIA NETWORKS, INC., a Delaware Corporation; and DOES 1 – 50, inclusive,<br><br>Defendants. : | Case No. <br><br>**CLASS ACTION COMPLAINT FOR:** <br><br>1.  **Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710** <br><br>2.  **Violations of New Jersey Consumer Fraud Act, N.J.S.A. § 6:8-1, et seq.** <br><br>3.  **Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.** <br><br>4.  **Violations of Cal. Civ. Code § 1799.3** <br><br>5.  **Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.** <br><br>6.  **Violation of False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.** <br><br>7.  **Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80** <br><br>8.  **Violation of the Electronic** |

|   | : | Communications Privacy Act, 18 U.S.C. § 2511 |
|---|---|---|
|   | : |   |
|   | : | **9.**      **Fraudulent Omission** |
|   | : |   |
|   | : | **10.**    **Negligent Omission** |
|   | : |   |
|   | : | **11.**    **Unjust Enrichment** |

## CLASS ACTION COMPLAINT

Plaintiff, Fred Blumberg ("Plaintiff"), by and through his attorneys, on behalf of himself and all others similarly situated, upon personal knowledge as to themselves and their own acts and experiences, and upon information and belief as to all other matters, complains and alleges as follows:

### NATURE OF THE ACTION

1.      Vizio Holdings Inc. ("Vizio") was founded in California in 2002, and since then has become a major manufacturer of Smart TVs. Vizio's TVs offer consumers the ability to connect to the internet to view movies and shows online and to interact with dozens of applications, as well as through more traditional methods like a cable provider.

2.      According to Vizio's S-1/A registration filing, filed with the Security and Exchange Commission on October 22, 2015, their "products are sold in over 8,000 retail stores across the United States." The company held "the #2 unit share position in the U.S. smart, high definition television, or HDTV, industry in 2014." See

http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612d s1a.htm

3.      Through its broad distribution of Smart TVs, Vizio states that it is "creating a community of over 10 million VIZIO connected units, or VCUs. A VCU is a Smart TV that has been connected to the Internet and has transmitted data collectively by our Inscape data services.

Our Inscape data services capture real-time viewing behavior data from our VCUs and enable us to provide it to advertisers and media content providers." See http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612d_s1a.htm.

4.     Vizio collaborated with Cognitive to clandestinely include tracking software on its Smart TVs. This software monitors the programs and other media being viewed and continuously reports back to Defendant Cognitive's servers. Even worse, Defendants' tracking software regularly scans its users' home network to capture other identifying information. Defendants use the network-scan information to link collected viewing histories with particular households, and perhaps, even particular people.

5.     Average consumers in the market for Smart TVs do not have the knowledge to understand what Defendants' tracking software is doing on their own. Instead, they trust Defendants to honestly disclose the tracking software.

6.     Instead, Defendants automatically enrolled thousands of consumers into their monitoring program. Because Defendants did not disclose the existence of or obtain consent to use, their tracking software, thousands of consumers were harmed by purchasing Defendants' TVs that invade their privacy.

7.     Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants from continuing to operate their Smart TV tracking software, and (ii) actual damages for those who purchased Vizio Smart TVs.

## PARTIES

8.     Defendant Vizio Holdings, Inc., is a Delaware corporation. Its principal executive offices are located at 39 Tesla, Irvine, California.

9.     Defendant Vizio, Inc., is a California corporation. Its principal executive offices are

located at 39 Tesla, Irvine, California.

10.     Defendant Vizio Inscape Services, LLC, is a Delaware Limited Liability Company. On information and belief, its principal executive offices are located at 39 Tesla, Irvine, California.

11.     Defendant Vizio Inscape Technologies, LLC, is a Delaware Limited Liability Company. On information and belief, its principal executive offices are located at 39 Tesla, Irvine, California.

12.     Defendant Cognitive Media Networks, Inc., is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 39 Tesla, Irvine, California.

13.     Vizio Holdings, Inc.; Vizio, Inc.; Vizio Inscape Services, LLC; Vizio Inscape Technologies, LLC; and Cognitive Media Networks, Inc. are referred to collectively throughout this Complaint as "Vizio."

14.     Defendant WPP Group USA, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 100 Park Ave., New York, New York.

15.     Defendant The Interpublic Group of Companies, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 909 Third Ave., New York, New York.

16.     Defendant Alphonso, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 735 Industrial Rd., San Carlos, California.

17.     Defendant Tapad, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 60 Madison Ave., New York, New

York.

18.     Defendant iSpot.tv, Inc. is a Delaware Corporation. Its principal executive offices are located at 15831 NE 8th St., Bellevue, Washington.

19.     Defendant Lotame Solutions, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 8850 Stanford Blvd., Columbia, Maryland.

20.     Defendant Xaxis, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 100 Park Ave., New York, New York.

21.     Defendant TubeMogul, Inc. is a Delaware Corporation registered to do business in the State of California. Its principal executive offices are located at 1250 53rd St., Emeryville, California.

22.     Defendant Audience Xpress LLC is a Delaware Limited Liability Company. On information and belief, its principal executive offices are located at 460 West 34th St., New York, New York.

23.     The true names and capacities of Does 1 through 50 are unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that each of these Defendants are in some way liable for the events referred to in this complaint and caused damage to Plaintiff and the Class Members. Plaintiff will amend this Complaint and insert the correct names and capacities of those defendants when they are discovered.

24.     At all times mentioned, each of the Defendants – including Does 1 through 50 – was the representative, agent, employee, joint venture, or alter ego of each of the other defendants and in doing the things alleged herein was acting within the scope of its authority as such. Each

Defendant is referred to collectively throughout this Complaint as "Defendants."

25.    Plaintiff, Fred Blumberg is a resident of Ocean County, New Jersey. He purchased two Vizio Smart TVs; model E241I-A1 at a Costco store in Ocean, New Jersey in April 2013 and model E5001-A1 at a Walmart store in Brick, New Jersey in May 2014.

## JURISDICTION AND VENUE

26.    Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limit of this Court.

27.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (d) of the Class Action Fairness Act because (i) at least one member of the Class is a citizen of a different state than the Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

28.    Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because many of the acts and transactions giving rise to this action occurred in this District, and Defendants (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the manufacture, distribution and sale of their products in this District; and (2) are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### I.    Vizio Smart TV's

29.    Cognitive Media develops "Automatic Content Recognition" software for televisions with integrated internet capabilities. Cognitive's software determines what viewers are watching in real-time. The video viewing habits collected through Cognitive's software is ultimately provided to third-party advertisers and content providers that aim to display custom and

targeted advertisements to consumers.

30.     Defendant Vizio is a leading manufacturer of Smart TVs. Vizio works with Cognitive to use its software and owns a controlling stake in Cognitive.

31.     Vizio's Smart TVs include internet connectivity through wireless networking ("Wifi"). Defendant Vizio designed its Smart TVs to utilize internet access through its Vizio Internet App and Vizio Internet App Plus ("VIA" and "VIA Plus", respectively) software services. With VIA and VIA Plus, Defendant Vizio creates a way for consumers to view programs and use other applications.

32.     According to Vizio, approximately 90% of its Smart TV customers made an initial connection of their Smart TVs to the Internet for the twelve month period ended September 30, 2015. Vizio's Discovery and Engagement Software, known as VIZIO Internet Apps Plus, connects customers "with traditional and streaming content providers, such as Netflix, Hulu, YouTube and Amazon Instant Video. Since 2009, users have streamed more than 3.5 billion hours of content through our discovery and engagement software." See http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612dsla.htm



33.     Vizio recently stated that it "believes that our platform, which enables ease of

discovery and access to digital content for television viewers, creates the opportunity to deliver and monetize additional services relating to [the video on demand] market." Vizio pre-installs many applications on its Smart TVs, including Netflix, YouTube, and Amazon Instant Video.

34.    The company's Inscape data services capture this viewing data in real time. "Inscape provides highly specific viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers...." The company, according to its October 22, 2015, SEC filing, expects that this will fuel future growth and drive revenue. See http://www.sec.gov/Archives/edgar/data/1648158/000119312515350398/d946612d s1a.htm

35.    On information and belief, to further realize its goal of monetizing its VCU television viewers' habits, Vizio acquired full ownership of Cognitive Media Networks, Inc., a software provider based in San Francisco, that enables Vizio's Inscape data services.

36.    On information and belief, Vizio actually knew that data brokers, advertisers, or other entities would combine user identification information transmitted to it-- including the user's IP address and other device identification information--with information held by others to identify persons as having requested or obtained specific video materials or services.

37.    Consumers pay a premium for access to Vizio's Smart TV functionality and expect access to those services. Unfortunately, Vizio and Cognitive installed and operated their software without consumer consent.

## II.    Defendants Monitor Consumers Viewing Habits and Secretly Scan Home Networks.

38.    On information and belief, Vizio determines the date, time, channel of programs, and whether users watch them live or recorded. The viewing patterns are then connected with a user's IP address - the Internet address that can be used to identify every device in a home, from

the household TVs to mobile phones. Vizio actually knows that IP addresses can be linked to individuals through data brokers offering "data enrichment," combining additional information about persons tied to particular IP addresses provided by Vizio.

39.     Defendants' tracking software monitors, in real time, what consumers are watching, scans home networks to capture consumers' identifying information, and sends that information back to servers owned and operated by Cognitive. Defendants then disclose the collected information to third-party data brokers and advertisers. Defendants do not disclose their tracking activities or even obtain consent. Instead, they automatically opt-in everyone into their invasive monitoring program. In a recent SEC filing, Defendant Vizio admitted that its encrypted communications contain particularized details of what consumers are watching. Defendant Vizio revealed in its SEC filings that these encrypted communications contain "most content displayed on [Vizio Smart TV] screens, including content from cable and satellite providers, streaming devices and gaming consoles."[1] Defendant goes on to state that it collects "up to 100 billion viewing points daily" about "highly specific viewing data."[2] The information Defendants collect is specific enough to determine what show or movie is being watched and even, what video game is being played. Specifically, Vizio states that it:

> collect[s] meaningful viewing behavior data by matching attributes
> of content displayed on the screens of … connected Smart TVs to
> our database of existing content, such as movies, TV shows and
> games. We must continue to develop and update this database and to
> match the content in this database to content displayed on [Smart
> TVs]. The process of developing this database is ongoing and
> incomplete, particularly with respect to content broadcast by local
> television stations. Delays in developing this database of content
> may decrease the value of our [software] data services.[3]

---

[1] Prospectus, at 10.

[2] *Id.* at 17.

[3] *Id.* at 46.

40.     On information and belief, Vizio falsely states that it encrypts IP addresses before sharing them; therefore, data brokers whose data includes IP addresses tied to names can identify the persons and the prerecorded video cassette tapes or similar audio visual materials watched by those persons merely by having their IP address or other device IDs.

41.     On top of the monitoring of video viewing activity, Defendants designed their software to continuously scan consumers' home computer networks. Defendants programmed the software to scan home networks to collect information to identify the people watching the TV.

42.     Defendants' software obtains products' names and model numbers along with product serial numbers and device identifiers. Defendants' software also obtains computer names, devices' unique identifiers, and information about Wifi networks. Through exposures to Defendants' software, Defendants' have gained access to an enormous amount of sensitive information.

43.     In its recent SEC filings, Defendant Vizio admits that it discloses information collected by the software to various third parties. Specifically, Vizio explains that it installed the software so that it can use "real-time viewing behavior data to deliver more effective, targeted advertising campaigns. … [T]he ability to collect and analyze real-time viewing data will enable measurable and increased return on marketing investment, enhance the value of television advertising, and drive increased television advertising spend."[4]

44.     Defendant explains that it compiles the information collected through the software and discloses the information data brokers to "enhance" the information.

45.     Despite invasively tracking consumers through their software, Defendants do not obtain consent or disclose to consumers that the software is on the TVs. Instead, Defendants

---

[4] *Prospectus*, at 31.

automatically enrolls everyone.

46.     In its SEC filings, Vizio acknowledges that "some individuals may be reluctant or unwilling to connect to the Internet through our Smart TVs because they have concerns regarding the risks associated with data privacy and security. If the wider public perceives data privacy or security concerns with respect to our Smart TVs, this could negatively impact the growth potential for the net sales of our Smart TVs and our Inscape data services."

47.     Defendants do not disclose the existence of the software during a Vizio Smart TV's setup, in advertising, or on the products' packaging.

48.     Instead, Defendants hid references about its software in obscure settings menus, knowing that no consumers would uncover them. Indeed, Defendants hid their privacy policy that purportedly governs how the software collects data and how Defendants use the data deep in the Smart TVs' menus.

49.     Consumers under this regime of tracking must make extensive efforts to "opt-out" of this procedure, and it is set as the default in violation of the Video Privacy Protection Act, which requires an "opt-in" procedure.

**III.     Defendant Provides Consumer Viewing Data that it Secretly Obtained to Third-Parties**

50.     As its privacy policy concedes, Vizio has begun providing data about customers' viewing habits to companies that "may combine this information with other information about devices associated with that IP address." Vizio actually knows that such data can identify persons by name.

51.     On information and belief, the companies Vizio has collaborated with to collect, synthesize, sell and otherwise disclose customers' data include WPP Group USA, Inc.; The Interpublic Group of Companies, Inc.; Alphonso, Inc.; Tapad, Inc.; iSpot.tv, Inc.; Lotame

Solutions, Inc.; Xaxis, Inc.; TubeMogul, Inc.; and Audience Xpress LLC (collectively "Data Entities").

52.     WPP Group USA, Inc. is the U.S. branch of WPP PLC, the world's largest communications services group. Through its numerous operating companies, WPP provides a "comprehensive range of advertising and marketing services." See http://wpp.com/wpp/about/.

53.     The Interpublic Group of Companies, Inc. is an organization of advertising agencies and marketing service companies. It is a "global provider of marketing solutions" that specializes in "consumer advertising, digital marketing, communications planning and media buying, public relations and specialty marketing." See https://www.interpublic.com/about/overview.

54.     Alphonso, Inc. is an advertising technology company that works to enable its clients to "capture TV audience data and monetize their audience better." See http://alphonso.tv/#advertisers.

55.     Tapad, Inc. is a marketing technology firm that "offers the largest in-market opportunity for marketers to address the ever-evolving reality of media consumption on smartphones, tablets, home computers and smart TVs." See http://www.tapad.com/about-us/who-we-are/. According to its website, "Tapad has the ability to connect a user who views an ad on TV with all of their digital devices." Its technology takes its clients' "audience segment IDs and fills in all of the associated devices."

56.     iSpot.tv, Inc. is a marketing technology company that provides social marketing tools and analytics. On its website, iSpot.tv urges its clients to "[s]ee your customers in a way you've never bene able to before, bringing an unprecedented measurement capability to TV advertising." See www.ispot.tv.



57.     Lotame Solutions, Inc. is a marketing technology company that operates one of the world's largest third-party data networks. According to its website, it "collects and analyzes rich data signals flowing from [its] partner's 12MM Smart TVs across the US" and then applies its technology "to match with mobile devices, tablets, laptops and desktops, which are linked 1:1." See http://resources.lotame.com/smart-tv-audiences. Lotame further suggests that its clients can "mix and match that data" with their own "first-party data or other third- party data."

58.     Xaxis, Inc. is a digital advertising company that delivers targeted digital media products that allow advertisers to reach and understand their audiences. Xaxis collects information when Internet users view and interact with certain websites. This information includes "the type of Internet browser, browser language, and operating system you use, your device's Internet protocol ('IP') address, unique identifiers available at or pertaining to your device, connection type (wired or Wi-Fi), region where your device is located, network to which your device is connected,

longitude/latitude of a (mobile) device, mobile carrier (if available), the Site and page you came from before, and visited after, viewing an advertisement, and information related to the Site and page you are viewing (i.e., in order to ascertain your interests). Devices include computers, mobile phones, tablets, e-readers, or other digital devices capable of maintaining an Internet connection." See https://www.xaxis.com/static/view/privacy-policy-en.

59.     TubeMogul, Inc. is a digital advertising company. According to its website, TubeMogul's "cross-channel advertising software allows you to run global, sophisticated brand campaigns using 1st and 3rd party data across premium inventory on all devices, formats and channels." See https://www.tubemogul.com/tubemogul-software/.

60.     Audience Xpress LLC is an advertising technology firm. According to its website, Audience Xpress "optimizes media buying based on the efficiency of reaching a specific audience, using connected TV and leading 3rd party data and analytics." See http://www.audiencexpress.com/about/.

61.     The Data Entities collaborate with Vizio to track, receive, exchange and/or repackage the personally identifiable information of Vizio customers.

62.     On information and belief, Vizio may share hashed or masked IDs in a way that permits matching the users to information in other data sets, so that data brokers, and specifically the Data Entities, can associate a device's viewing information with the personally-identifying information that the broker already holds, therefore revealing the viewing habits of persons identified by the broker.

63.     On information and belief, Vizio actually knows such data can and in many instances will be recombined to identify persons, indeed Vizio knows it raises the value of the data. Accordingly, Vizio actually knew that it was disclosing: 1) a user's identity; 2) the identity of

the video material; and 3) the connection between the two—that the given user had "requested or obtained" the given video material. In its October 22, 2015 filing for an initial public offering, Vizio touted its ability to provide "highly specific viewing behavior data on a massive scale with great accuracy."

64.     The Data Entities are recipients of this personally identifiable information and in some cases resell this information to their own, third-party clients.

**IV.     Plaintiff Fred Blumberg's Experience.**

65.     In April 2013, Plaintiff purchased a 24" Vizio E241I-A1 Smart TV from a local Costco retailer near his home in Ocean, New Jersey.

66.     In May 2014, Plaintiff purchased a 50" Vizio E5001-A1 Smart TV from a local Walmart retailer near his home in Brick, New Jersey.

67.     Since purchasing the televisions, Plaintiff has had his Smart TVs connected to his home wireless network and has used the Smart TVs to watch shows and movies, including through connected applications. At no time did he consent to the operation of Defendants' software. And, at no time did Defendants disclose to him that the Smart TVs had Defendants' software installed and operating.

68.     Had he known that Defendants installed their software on his television he would not have purchased the Smart TV. Accordingly, Plaintiff has suffered damages as the result of Defendants' installation of and operation of their tracking software.

CLASS ALLEGATIONS

69.     <u>Class Definition</u>: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> All New Jersey residents who purchased one or more Vizio Smart
> TV with Defendants' software installed.

70.     The following people are excluded from the Class: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries,

parents, successors, predecessors, and any entity in which the Defendants or their parents have a

controlling interest and its current or former employees, officers and directors; (3) persons who

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims

in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any

such excluded persons.

71.     <u>Numerosity</u>: The exact number of members of the Class is unknown and is not

available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class

likely consists of hundreds of thousands of individuals. Class members can be easily identified

through Defendants' or their agents' records.

72.     <u>Commonality and Predominance</u>: There are many questions of law and fact

common to the claims of Plaintiff and the other members of the Class, and those questions

predominate over any questions that may affect individual members of the Class. Common

questions for the Class include but are not limited to the following:

a.      Whether Defendants disclosed that their software was installed on the Vizio
        Smart TVs;

b.      Whether Defendant Vizio unlawfully disclosed and continues to unlawfully
        disclose consumers' personally identifiable information, including their
        video viewing records, in violation of 18 U.S.C. § 2710(b);

c.   Whether Defendant Vizio unlawfully disclosed and continues to unlawfully disclose consumers' personally information or records, including records of their video viewing history, in violation of Cal. Civ. Code § 1799.3;

d.   Whether Defendant Vizio's disclosures were committed knowingly;

e.   Whether Defendants' conduct described herein was willful;

f.   Whether Defendants' conduct described herein constitutes a violation of California's Consumers Legal Remedies Act (Cal. Civ. Code. §§ 1750, et seq.);

g.   Whether Defendants' conduct described herein constitutes a violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.);

h.   Whether Defendant Vizio's conduct described herein constitutes a violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, et seq.);

i.   Whether Defendant's conduct described herein constitutes a violation of New Jersey's Consumer Fraud Act (N.J.S.A § 6:8-1, et seq.);

j.   Whether Defendant Vizio's conduct described herein constitutes fraudulent omission;

k.   Whether Defendant Vizio's conduct described herein constitutes negligent omission; and,

l.   Whether Defendants' conduct has caused them to be unjustly enriched.

73.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

74.   <u>Adequate Representation</u>: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are

committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

75.     Policies Generally Applicable to the Class: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

76.     Superiority: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be

ensured.

77.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

Definition" based on facts learned through additional investigation and in discovery.

## COUNT I
## Violations of the Video Privacy Protection Act
## 18 U.S.C. § 2710
## (On Behalf of Plaintiff and the Class)

78.     Plaintiff incorporates the foregoing allegations.

79.     Defendant Vizio is a "video tape service provider[]" as defined by the VPPA

because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale,

or delivery or prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C.§

2710(a)(4), by delivering videos (i.e., "similar audio visual materials" under the VPPA's

definition) to consumers through its internet connected Smart TVs.

80.     Specifically, and as detailed in Section I, Vizio facilitates the transmission of

specific video titles to be made to consumers through its VIA and VIA Plus services that allows

consumers to watch movies and shows, listen to music, and access applications on demand.

81.     Plaintiff is a "consumer" as defined by the VPPA because she is a "renter,

purchaser, or subscriber of goods or services from a video tape service provider," namely

Defendant Vizio. 18 U.S.C. § 2710(a)(1). Specifically, Plaintiff purchased two televisions

manufactured, marketed, and distributed by Defendant Vizio. Moreover, Plaintiff paid a premium

for Defendant Vizio's "smart TV" functionality. As such, she paid for (and Defendant Vizio

intended to create) a continuing and ongoing relationship between herself and Defendant Vizio for

access to premium "smart TV" features, including access to movies and television shows on

demand.

82.    Plaintiff has viewed many movies and television shows on her Smart TVs. During these occasions, Defendants' software collected information on the specific movies or shows she was watching, performed a scan of Plaintiff's home network for unique identifiers (e.g., computer names, MAC addresses, product serial numbers), and transmitted the collected information to Defendant Vizio.

83.    Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

84.    Defendant Vizio has disclosed and continues to disclose Plaintiff's information to third parties. Defendant Vizio first discloses collected personally identifying information ("PII") to third-party data brokers to "enhance" the information with other demographic information about Plaintiff, and then discloses the "enhanced" personally identifying information to advertisers to "generate meaningful revenue." [5]

85.    Defendant Vizio's transmissions of Plaintiff's PII to data brokers and advertisers constitutes "knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

86.    At no time did Plaintiff ever provide Defendant Vizio with any form of consent—either written or otherwise—to collect her PII or to disclose her PII to third parties.

87.    Nor were Defendant Vizio's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, the Defendant Vizio's disclosures to data brokers and advertisers were not necessary for "debt collection activities, order fulfillment, request

---

[5] Prospectus, at 10.

processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

88.     As a result of Defendant Vizio's unlawful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction prohibiting Defendant Vizio from collecting and then releasing her and the Class's PII in the future, as well as the maximum statutory and punitive damages available under the VPPA. 18 U.S.C. § 2710(c).

### COUNT II
### Violations of New Jersey Consumer Fraud Act
### (On Behalf of Plaintiff and the Class)

89.     Plaintiff incorporates by reference the foregoing allegations.

90.     This cause of action is brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.,* which provides protection for New Jersey consumers against unfair or deceptive acts or practices in connection with the sale or advertisement of any merchandise whether or not the person has in fact been misled, deceived or damaged. *See* NJ.S.A. 56:8-2.

91.     Plaintiff and the class members are "persons" as defined by N.J.S.A. 56:8-1 (d).

92.     Defendants are a person as defined by N.J.S.A. 56:8-1(d).

93.     Defendants' Vizio TVs offered for sale constitute "merchandise" within the meaning of N.J.S.A. 56:8-1(c).

94.     N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged

thereby, is declared an unlawful practice; ... "

95.     At all times relevant hereto, as described more fully above, Defendants deliberately and knowingly deceived Plaintiff and the Class by no conspicuously disclosing to consumers that the Vizio Smart TVs contained the software, as described herein that was scanning and collecting data and information personal to the consumer.

96.     Defendants have therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission in their advertising, marketing, selling, and distribution of Vizio Smart TVs.  Therefore, Defendants have violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

97.     By reason of the foregoing, Plaintiff and the Class have been harmed, entitling them to injunctive relief, compensatory damages, liquidated damages, statutory damages and/or punitive damages, and costs and reasonable attorneys' fees.

**COUNT III**
**Violations of the Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, et seq.**
**(On Behalf of Plaintiff and the Class)**

98.     Plaintiff incorporates by reference the foregoing allegations.

99.     The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

100.     Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

101.     Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(a).

102.     Defendant Vizio's Smart TVs are "goods" within the meaning of Cal. Civ. Code §

1761(a).

103.     As described herein, Defendants have engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 et seq., to the detriment of Plaintiff and the Class.

104.     Defendants, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Class by installing their software on Vizio Smart TVs and collecting, without authorization, consumers' viewing habits.

105.     Specifically, by not disclosing that their software was installed on the Smart TVs, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

a.     In violation of § 1770(5), by representing that the Smart TVs had characteristics, ingredients, uses, benefits, or quantities which they did not have;

b.     In violation of § 1770(7), by representing that the Smart TVs were of a particular standard, quality, or grade of which they are not; and

c.     In violation of § 1770(9), by advertising the Smart TVs with the intent not to sell its goods as advertised.

106.     Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

107.     Defendants did not disclose facts about their software to consumers that purchased the Smart TVs because they knew consumers would not purchase the Smart TVs if they knew of the software.

108.     Defendants were under a duty to Plaintiff and the Class to disclose that the Smart TVs contained the software because:

a.   Defendants were in a superior position to know that the software was installed on the Smart TVs;

b.   Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendants included the software on the Smart TVs;

c.   Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendants included the software on the Smart TVs; and

d.   Defendants knew that Plaintiff and Class members would not purchase the Smart TVs if they knew of the software.

109.   By failing to disclose that the Smart TVs contained the software, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

110.   The facts concealed or not disclosed by Defendants to Plaintiff and the Class, including that the Smart TVs contained the software, are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Smart TVs.

111.   Plaintiff and the Class reasonably expected that their televisions would be free from software.

112.   The existence of software on a television is a material term for the purchase of a television, and a primary reason to not purchase a particular television.

113.   Defendants did not disclose facts about their software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase the Smart TVs if they knew of the software.

114.   Through the omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the Smart TVs when they otherwise would not have purchased them.

115.    As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1750, et seq., Plaintiff and each Class member have suffered harm in the form of paying monies to purchase the Smart TVs when they otherwise would not have purchased them.

116.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for its violations of the CLRA. For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

**COUNT IV**
**Violations of Cal. Civ. Code § 1799.3**
**(On Behalf of Plaintiff and the Class)**

117.    Plaintiff incorporates by reference the foregoing allegations.

118.    California Civil Code § 1799.3(a) provides that "No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

119.    Defendant Vizio is a "person providing video recording sales or rental services" because it facilitates the sale and rental of videos to consumers through its internet connected Smart TVs.

120.    None of the exemptions provided by Cal. Civ. Code § 1799.3 (b) apply.

121.    Defendant Vizio has disclosed and continues to disclose Plaintiff's personal information and the contents of records prepared or maintained by Vizio to third parties. Defendant Vizio first discloses collected personal information and contents of records to third-party data brokers to "enhance" information collected through the software with other demographic

information about Plaintiff. Defendant Vizio then discloses the "enhanced" personal information and contents of records to advertisers.

122.    At all times Defendant Vizio has acted willfully.

123.    At no time did Plaintiff provide Defendant Vizio with any form of consent allowing it to collect her personal information and viewing records, nor to disclose her personal information and viewing records to third parties.

124.    As a result of Defendant Vizio's unlawful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction prohibiting Defendant Vizio from collecting and then disclosing her and the Class's personal information in the future, as well as the maximum statutory and punitive damages available under Cal. Civ. Code § 1799.3(c)(1).

**COUNT V**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiff and the Class)**

125.    Plaintiff incorporates by reference the foregoing allegations.

126.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, et seq., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

127.    The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

128.    The specifications of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a

product. Any deception or fraud related to the specifications of a product is materially misleading.

129.    As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by installing their software on Vizio Smart TVs and collecting, without authorization, consumers' viewing habits.

130.    Defendants have violated the fraudulent and unfair prongs of the UCL by knowingly installing software that collects information on the specific movies or shows being watched and that performs a network scan of home computer networks to capture, amongst other things, the MAC identifiers and names of wireless routers, mobile devices (e.g., smartphones), and computers and then sends the collected information to Defendant Vizio, Inc.

131.    Defendants did not disclose that the Smart TVs contain the software because they knew consumers would not purchase the Smart TVs if they knew of that fact.

132.    Furthermore, Defendants never sought or obtained consumers' consent to install or operate their software on consumers' Smart TVs.

133.    As such, Defendants have caused substantial injury to consumers through their fraudulent and unfair conduct described above. The injuries caused by Defendants' fraudulent and unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Defendants knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the existence of the software.

134.    Defendants' fraudulent and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

135.    Defendants' conduct directly and proximately caused Plaintiff and the Class actual

monetary damages in the form of the price paid for the Smart TVs.

136.    If Defendants had disclosed that their software was installed and operating on the Vizio Smart TVs Plaintiff and members of the Class would not have purchased the Smart TVs.

137.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendants to cease the fraudulent and unfair practices described herein; (2) requiring Defendants to restore to Plaintiff and each Class member any money acquired by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT VI**
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 et seq.**
**(On Behalf of Plaintiff and the Class)**

138.    Plaintiff incorporates the foregoing allegations.

139.    California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

140.    As detailed throughout this Complaint, Defendant Vizio has disseminated unfair, deceptive, untrue, and misleading advertisements because it does not disclose that its Smart TVs contain the software. Defendant Vizio did not disclose that fact because it knew consumers would not purchase its Smart TVs if they knew it contained the software.

141.    Defendant Vizio knew or should have known when creating and disseminating advertisements without disclosing that the Smart TVs contain the software that they contained materially false and misleading information.

142.    A reasonable person is likely to be deceived by Defendant Vizio's omissions.

143.    Defendant's conduct directly and proximately caused Plaintiff and the Class actual

monetary damages in the form of the price paid for the Smart TVs.

144.    Plaintiff seeks an order (1) requiring Defendant to cease the false advertising practices described herein; (2) requiring Defendant to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## COUNT VII
### Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80
### (On Behalf of Plaintiffs and the Class)

145.    Plaintiffs incorporate the foregoing allegations.

146.    The California Customer Records Act mandates, among other things, that a business take all reasonable steps to destroy or arrange for the destruction of a customer's records within its custody or control, which contain personal information that is no longer to be retained by the business. Cal. Civ. Code § 1798.81.

147.    A business may destroy customer records by erasing the information, or modifying the personal information in those records to make it unreadable or undecipherable through any means. Cal. Civ. Code § 1798.81(b), (c).

148.    Defendants have violated Cal. Civ. Code § 1798.81 by failing to erase or otherwise destroy their users' personal information or making their customers' personal information unreadable or undecipherable.

149.    Pursuant to Cal. Civ. Code § 1798.84, Plaintiffs, on their own behalf and on behalf of the Class, seek an order enjoining Defendants' conduct described herein, an award of attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

## COUNT VIII
### Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511
### (On behalf of Plaintiffs and the Class)

150.    Plaintiffs incorporate the foregoing allegations.

151.    Defendants, either directly or by aiding, abetting, or conspiring to do so, have intentionally intercepted or procured to be intercepted Plaintiffs' and Class Members' electronic communications without Plaintiffs' or Class Members' knowledge, authorization, or consent in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511.

152.    Defendants, either directly or by aiding, abetting or conspiring to do so, have also intentionally used or procured to be used a device to intercept the above-referenced electronic communications.

153.    Defendants conspired to intercept the content of the programs viewed by Plaintiffs and Class Members on their Smart TVs, as alleged herein.

154.    Through the provision, loading, and enabling of software and other technology on Smart TVs, collection of communications, and provision of services to permit the illegal interception of electronic communications as alleged herein, Defendants, one or all of them, set out on a course of conduct with the intention of intercepting communications of Plaintiffs and Class Members.

155.    An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. This definition includes television programming.

156.    Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring another person to intercept or endeavor to intercept

Plaintiffs' and Class Members' electronic communications.

157.     Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally collecting, transmitting, storing and disclosing, or endeavoring to disclose, to any other person, the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and Class Members' electronic communications.

158.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' or Class Members' electronic communications.

159.     Neither Plaintiff nor Class Members authorized nor consented to Defendants' interception of electronic communications.

160.     The Electronic Communications Privacy Act, 18 U.S.C. § 2520 provides for a private cause of action and allows for declaratory and equitable relief as appropriate, damages, disgorgement of profits, and statutory damages of the greater of $10,000.00 or $100.00 per day for each day of violation, actual and punitive damages, and reasonable attorneys' fees and costs.

161.     Plaintiffs and the Class seek all relief afforded by these provisions as a result of Defendants' violations.

## COUNT IX
### Fraudulent Omission
### (On Behalf of Plaintiff and the Class)

162.     Plaintiff incorporates by reference the foregoing allegations.

163.     As described with particularity herein, Defendant Vizio has concealed or suppressed a material fact. Specifically, Defendant Vizio concealed the fact that its Smart TVs

contain software that collects information on the specific movies or shows being watched and that performs a network scan of home computer networks to capture, amongst other things, the MAC identifiers and names of wireless routers, mobile devices (e.g., smartphones), and computers.

164.   Defendant Vizio was under a duty to Plaintiff and the Class to disclose that the Smart TVs contained the software because:

a.   Defendant was in a superior position to know that the software was installed on its Smart TVs;

b.   Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendant included the software on its Smart TVs;

c.   Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendant included the software on its Smart TVs; and

d.   Defendant knew that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the software.

165.   Defendant intentionally concealed or suppressed information about the software with intent to defraud Plaintiff and members of the Class. Specifically, Defendant knew that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the software. Moreover, Defendant knew that, absent the software, it would have to pay Plaintiff and members of the Class for access to their video viewing history.

166.   Plaintiff and members of the Class did not know that the Smart TVs they purchased contained the software. Had they known, they would not have purchased the Smart TVs.

167.   Defendant Vizio's conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

168.   Plaintiff, on behalf of herself and the Class, seeks damages from Defendant Vizio's unlawful conduct.

## COUNT X
## Negligent Omission
## (On Behalf of Plaintiff and the Class)

169.   Plaintiff incorporates by reference the foregoing allegations.

170.   As described with particularity herein, Defendant Vizio has negligently concealed or suppressed a material fact. Specifically, Defendant Vizio negligently concealed the fact that its Smart TVs contain software that collects information on the specific movies or shows being watched and that performs a network scan of home computer networks to capture, amongst other things, the MAC identifiers and names of wireless routers, mobile devices (e.g., smartphones), and computers

171.   Defendant Vizio was under a duty to Plaintiff and the Class to disclose that the Smart TVs contained the software because:

   a.   Defendant was in a superior position to know that the software was installed on its Smart TVs;

   b.   Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendant included the software on its Smart TVs;

   c.   Defendant should have known that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendant included the software on its Smart TVs; and

   d.   Defendant should have known that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the software.

172.   Defendant negligently concealed or suppressed information about the software. Specifically, Defendant should have known that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the software or that it would have had to pay for access to their video viewing history.

173.   Plaintiff and members of the Class did not know that the Smart TVs they purchased

contained the software. Had they known, they would not have purchased the Smart TVs.

174.    Defendant Vizio's conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

175.    Plaintiff, on behalf of herself and the Class, seeks damages from Defendant Vizio's unlawful conduct.

## COUNT XI
## Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

176.    Plaintiff incorporates by reference the foregoing allegations.

177.    Plaintiff and the Class have conferred a benefit upon Defendants in the form of their personal video viewing history. Absent the use of their unauthorized software, Defendants would have had to pay Plaintiff and each member of the Class money in exchange for their video viewing history.

178.    Defendants appreciate and/or have knowledge of the benefits conferred upon them by Plaintiff and the Class.

179.    Under principles of equity and good conscience, Defendants should not be permitted to retain the benefit obtained from Plaintiff and the members of the Class, which Defendants have unjustly obtained as a result of its unauthorized software.

180.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendants have received or generated as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fred Blumberg on behalf of himself and the Class respectfully requests that the Court enter an order:

CLASS ACTION COMPLAINT                    34

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Fred Blumberg as representative of the Class, and appointing his counsel as class counsel;

B.     Declaring that Defendants' actions, as set out above, violate the VPPA (18 U.S.C. § 2710), NJ. CFA (N.J.S.A. § 6:8-1 et seq.), Cal. Civ. Code §§ 1750 et seq., UCL (Cal. Bus. & Prof. Code §§ 17200 et seq.), CRA (Cal. Civ. Code § 1798.80), ECPA (18 U.S.C. §2311), Cal. Civ. Code § 1799.3, and the FAL (Cal. Bus. & Prof. Code §§ 17500, et seq.), and constitute fraudulent omission, negligent omission, and unjust enrichment;

C.     Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

F.     Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

G.     Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: May 11, 2016

**FRED BLUMBERG**, individually and on behalf of all others similarly situated,

ANAPOL WEISS

BY:_____

SOL H. WEISS, ESQUIRE
DAVID S. SENOFF, ESQUIRE
MELISSA FRY HAGUE, ESQUIRE
PAOLA PEARSON, ESQUIRE

CLASS ACTION COMPLAINT                    35

ONE LOGAN SQUARE
130 NORTH 18TH STREET, SUITE 1600
PHILADELPHIA, PA 19103
(215) 790-1130 PHONE

Attorneys for Plaintiff and the Putative Class